## SUGARLAND INDUSTRIES v. PARKER et al. . (No. 3333.)*

Court of Civil Appeals of Texas. Texarkana. Feb. 10, 1927.

Rehearing Denied Feb. 24, 1927.

1. **Corporations** ⬤➡363—**Evidence of fraud by corporation's directors in making false report to commercial agency held sufficient to go to jury.**

In action against directors of corporation for fraud in making false report of financial conditions of corporation to commercial reporting agency, causing plaintiff to extend credit to corporation, evidence of fraud *held* sufficient to go to jury.

2. **Corporations** ⬤➡335—**Director of corporation is liable for fraud in making false report of corporation's financial condition only for his own acts or omissions.**

Director of corporation is not liable merely by virtue of position for making false report of financial condition of corporation, but is liable only for his own acts or omissions.

3. **Corporations** ⬤➡363—**Evidence as to participation of two directors in alleged fraudulent report of corporation's financial condition held to present jury question.**

In action against corporation's directors for making alleged fraudulent report of corporation's financial condition, in reliance on which plaintiff sold goods to corporation, evidence as to participation of two directors *held* to present jury question.

4. **Evidence** ⬤➡413—**Director, sued for making fraudulent financial report, was competent to testify that he did not participate in meeting voting assessment of stockholders as shown by minutes.**

In action against corporation directors for making alleged false report of corporation's financial condition, based on resolution to assess stockholders, which was not intended to be acted on, minutes showing one director present at meeting were properly offered by plaintiff, and such director was properly permitted to testify that he did not participate, and that no such resolution was passed by board as such.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by the Sugarland Industries against J. B. Parker and others to recover for fraudulent misrepresentation. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

The Sugarland Industries brought the suit on November 16, 1925, to recover damages, against four of the seven directors of the A. P. Moore's Sons, Incorporated, alleging nonresidency and insolvency as ·to the other three. The suit is against the individual directors, as such, of the said corporation, and not against the corporation. The petition alleges that the defendants, while acting as directors of A. P. Moore's Sons, Incorporated, caused to be prepared and issued to R. G. Dun & Co. a statement of the financial condition of the said corporation, and which·statement was furnished by R. G. Dun & Co.· to the plaintiff. It is then alleged that:

"Plaintiff would further show to the court that said statement so prepared or caused to be prepared and issued by the defendants herein and furnished by them to R. G. Dun & Co. and by the said R. G. Dun & Co. to plaintiff was false and fraudulent in that said corporation did not have a valid, binding and collectible assessment of 25 per cent. of the stock against the stockholders in said corporation, and that said item of $50,000.00 carried in said financial statement as an asset to be used in the business was in fact no asset at all and had no value whatever; that said assessment was not legally made and was uncollectible and was never intended to be collected; that said defendants and each of them knew .at the time said assessment item was included in the said financial statement that same was not an asset of the corporation and could not be used as such, but notwithstanding this incorporated said item in said statement for the sole and only purpose of bolstering up the credit of said corporation. That if plaintiff had been advised of the true financial condition of said corporation it would not have extended to it the credit it did extend, but, relying upon said statement issued and caused to be issued by the defendants herein to be true, it did extend said credit to its damage in the sum of $6,981.11 as hereinbefore alleged, for all of which said defendants, by reason of the facts hereinbefore alleged, are jointly and severally liable to it."

The defendants answered by general and special denial, and pleaded the statute of two-year limitation. The plaintiff filed a supplemental petition in reply to the defendants' answer, averring to the effect that, if the defendants did not actually circulate and participate in the alleged statement, they nevertheless were chargeable with knowledge of it as directors of the corporation, and negligently failed in their duty in respect to the issu-

ance and circulation of such statement. After hearing the evidence, the court peremptorily instructed the jury to return a verdict in favor of the defendants.

The A. P. Moore's Sons, Incorporated, was organized under the laws of this state to carry on a wholesale grocery business, with principal office and place of business at Tyler. In the latter part of January, 1922, the president of the company, as customarily done about the first of each year, handed to the local representative at Tyler of R. G. Dun & Co. an audited statement of A. P. Moore's Sons, Incorporated. R. G. Dun & Co. received this statement, and itself then made up a general report to be furnished subscribers on request. The Sugarland Industries, engaged, besides other things, in the manufacture and sale of sugar in this state, was requested by the A. P. Moore's Sons, Incorporated, to extend to it a line of credit in the purchase of sugar. The Sugarland Industries then requested of R. G. Dun & Co. a financial statement as to A. P. Moore's Sons, Incorporated. R. G. Dun & Co. furnished the following:

"(Please note if name, business and address corresponds with your inquiry.)

"Moore's A. P. Sons (Inc.) Whol. Gro. Tyler, Texas. Smith County.

"F. A. Moore, President; A. P. Moore, Vice Pres.; Roy Caldwell, Vice Pres.; T. I. Boyette, Secretary; H. L. Cambron, Treasurer.

"January 31, 1922. 214–18 East Line St.

"Record.—Incorporated in April, 1919, under Texas laws, with an authorized capital stock of $150,000, and in February, 1920, an amendment was filed to the charter, increasing the capital to $200,000, all paid in. The officers and J. B. Parker are the directors.

"F. A. and A. P. Moore are sons of the late A. P. Moore, Sr., founder of the Moore Grocery Co., wholesale, here many years ago. At his death, about 1916, his sons inherited among (them) $150,000, a good part of which they invested in this business, as members of Parker, Pinkerton & Caldwell. Boyette and Cambron are active in the management of the concern, and are men of small means.

"Statement.—The subjoined statement is submitted by F. A. Moore, Pres., and is a copy of an audited report, showing the company's condition as per inventory of December 31, 1921:

### Assets.

| | |
|---|---:|
| Cash | $ 1,352 46 |
| Notes recv | 23,670 27 |
| Accounts rec | 93,600 90 |
| Stock Tyler Hotel Co | 1,500 00 |
| Merchandise inventory | 142,777 43 |
| Automobiles | 10,023 43 |
| Furniture and fixtures | 6,996 61 |
| Unpaid assessment of stockholders | 50,000 00 |
| Deferred charges | 6,207 48 |
| | $334,484 91 |

### Liabilities.

| | |
|---|---:|
| Notes payable | $117,178 20 |
| Bank overdraft | 17,205 90 |
| Capital stock | 200,000 00 |
| Undivided profits | 100 81 |
| | $334,484 91 |

"Sales during 1921, $782,763.87.

"Adequate insurance carried.

"General Information.—The merchandise was invoiced at cost or market, whichever the lower, and $18,628.16 is shown to have been charged off for doubtful and bad accounts. It is further explained that 25% was allowed for depreciation on automobiles and 10% for furniture and fixtures. Of accounts and notes previously charged off, $5,407.87 is shown to have been collected. Due to poor trade conditions which have existed in this section since Fall of 1920, the company has been forced to lose some of its outstanding, as well as on merchandise declines, and its statement of operation for the year 1921 indicates a net loss of $50,080.

"In view of these losses, a meeting of the stockholders was called before taking inventory, and it was agreed that rather than show the capital impaired in the statement, a 25% assessment should be invoked. However, this is not to be paid, unless necessary for the operation of the business. Indebtedness is placed, and the company is at present enjoying a nice cash business.

"Affairs are regarded in capable hands, and the personnel of the concern is good. Branch houses are operated at Nacogdoches, and Mexia, Texas, the latter having been opened just recently.

### "Trade Reports.

| H. C. | Terms. | Owes. | Pays. | Remarks. |
|---|---|---|---|---|
| 27000 in 1921 | | | | |
| 1000 | 10 days | 4300 | Discount. | Satisfactory |
| 2500 2% | 10 days | 2000 | Discount. | account |
| 6000 | regular | 0 | Discount. | |

"Another house reports: All purchases discounted; act. satisfact. No fires reported. 2–1–22.

"July 31, 1922. This company continues along the usual lines and reference is now made to full report dated January 31, 1922. Sales are being confined principally to a cash and weekly basis, and operations are being carefully conducted. Prospects for a fair cotton crop in this section this fall now look good, and it is believed that the concern will end the year with some profit. 8–1–22  —12—CxI"

After introducing in evidence the statement above set out, the appellant then read in evidence the following from the regular minutes of the corporation record:

"1/2/22.

"At a called meeting of the board of directors of A. P. Moore's Sons, Inc., January 2, 1922, the following named directors being present, J. B. Parker, F. A. Moore, T. I. Boyette, the following resolution was presented by Mr. Upleger of Upleger & Falk, certified public accountants, and after full discussion was passed as being for the best interests of the business:

"Resolved that an assessment of twenty-five per cent. be levied against all stockholders as of record December 31, 1921.

"Said assessment to remain on the books of the company, and not to be used by the officers without the consent of the stockholders.

"[Signed]  F. A. Moore.
T. I. Boyette.

"Tyler, Texas, 1/10/1922.

"The regular annual meeting of the stockholders of A. P. Moore's Sons, Inc., was held at the

office of the corporation in Tyler, Texas, on the above date.

"Judge T. B. Ramey, Jr., was elected chairman and T. I. Boyette, secretary.

"The roll call of stockholders developed that 1,417 shares out of a total of 2,000 shares were represented in person and by proxies.

"The president reviewed the year's business and invited questions from stockholders.

"After a thorough discussion of the status of the business, the following motion was made by Mr. Gaston and seconded by Mr. Jarvis:

" 'Whereas it has been necessary to protest the capital stock of the company, and, whereas, a statement rendered by the company without an assessment on stock would show an impairment of capital: Therefore, be it resolved, that the stockholders hereby approve the action of the directors in levying a 25% assessment against all stockholders as of record December 31st, 1921.

" 'Said assessment to remain on the books of the company and not to be collected or used by the officers without the consent of the stockholders, provided no dividends are to be declared or paid to stockholders until said assessments are liquidated.'

"By a rising vote this motion was unanimously adopted.

"On motion of Dr. Crews, seconded by Mr. Cousins, the number of directors was increased to seven and the following elected: F. A. Moore, A. P. Moore, Jr., H. L. Cambron, T. I. Boyette, J. B. Parker, Mrs. A. P. Moore, and T. B. Ramey, Jr.

"All business having been concluded, the meeting was adjourned.

"[Signed]  F. A. Moore, President.

"[Signed]  T. I. Boyette, Secretary.

(Latter part of minutes of January 10, 1921, showing who were elected directors for 1921.)

"On motion of Mr. O. E. Wood, seconded by M. Katz, the following directors were unanimously elected for the ensuing year: F. A. Moore, A. P. Moore, Jr., H. L. Cambron, Roy Caldwell, J. B. Parker and T. I. Boyette.

"[Signed]  F. A. Moore, Pres.

"[Signed]  H. L. Cambron, Treas.

"[Seal.]  [Signed]  T. I. Boyette, Sec'y."

The agent of R. G. Dun & Co. testified:

"I noted the reference to the assessment having been passed according to the minutes of a regularly organized meeting of the stockholders of the corporation. I never saw those minutes. I never asked to see them. I never made any inquiry of any of the officers concerning the contents."

The Sugarland Industries, relying on such statement as being a correct statement as a basis for credit, shipped several cars of sugar during the months of August and September, 1922, aggregating the value of $19,164.32. On October 13, 1922, the A. P. Moore's Sons, Incorporated, upon voluntary application, was adjudged bankrupt. The trustee in bankruptcy paid the Sugarland Industries a sum sufficient to reduce the account to $6,981.

The vice president of appellant in charge of sales and credit, and solely acting in the particular matter, testified, as pertinent to set out:

"We requested (of R. G. Dun & Co.) this particular report in January (1922). It was some time in February or March that we received it, but we have no record when we received it. We relied upon the original statement, and shipped sugar to A. P. Moore's Sons, Incorporated. We would not have shipped it without the information contained in the statement. Without that item of $50,000 assessment there would be considerable impairment of the capital stock. The undivided profits as shown on the statement is $100.81. The $50,000 is listed as assets. If the $50,000 were not listed as assets, the statement would show a loss of approximately $49,900. It was after this suit was filed that I first learned that the stockholders had not in fact agreed to this assessment. I am convinced now that it was not collectible. I did not know of the existence of the minutes with reference to this assessment until first meeting of the creditors in bankruptcy in November 1922. I would not have sold the sugar except on the strength of the representation of that $50,000 assessment. I did not write to A. P. Moore's Sons or inquire into the nature of that assessment. I just took the statement to be correct. I did not make any independent investigation at all."

The account for the sugar was proven and not denied by appellees. It was proven that the defendants were experienced business men, and, except T. B. Ramey, Jr., were connected with the A. P. Moore's Sons, Incorporated, as officers and directors for several years prior to January, 1922.

The appellant Parker testified, as pertinent to set out, that:

"I was present at the meeting of the directors on January 2, 1922. I did not understand that was a formally called meeting. F. A. Moore telephoned me to come down there, and I went. There were three directors there: Mr. Aldridge Moore, Ipson Boyette, and myself. Mr. Upleger, of Upleger & Falk, accountants, was there. I was called down there to discuss about making an assessment on the capital stock. Mr. Moore stated that was the purpose. I did not agree to make any assessment against the capital stock. I told him I didn't want to assess anybody's stock. I knew I wouldn't assess my own, and I didn't agree to the assessment. I very soon left. There was no resolution passed by us there. There was no formal meeting gone into and no resolution drawn up and signed while I was there. When I left there were only two directors left there. Five directors constituted the board. I was not at the meeting of the stockholders on January 10, 1922. I did not participate in any way in any action of the stockholders in approving or confirming any assessment against the capital stock. The matter of assessing stock was never thereafter brought to my attention. I never knew until the creditors' meeting in bankruptcy about any resolution or the minutes assessing capital stock. I did not know anything about a financial statement having been made up and certified by accountants including as an item assessment of $50,000 against stock."

T. B. Ramey, Jr., testified:

"I was present and acted as chairman of the stockholders' meeting on January 10, 1922. I

was elected a director at that meeting. At that meeting the president of the corporation reviewed the year's business. The statement we had at that meeting did not show the $50,000 assessment. I knew Upleger & Falk were auditing the books. At that meeting the resolution was passed assessing stockholders. · I never did consent to the assessment of stockholders. Except what the resolution shows, none of the stockholders ever formally agreed to be assessed. I told them the assessment would not be legally enforceable unless the stockholders would agree to it—that it would have to be agreed to before it could ·ever be collected. I didn't know anything of any such statement being put in circulation by R. G. Dun & Co. until the bankruptcy proceeding."

Lasseter & Simpson, of Tyler, and Lee Curtis, of Sugarland, for appellant.

T. N. Jones and Nat W. Brooks, both of Tyler, for appellees.

LEVY, J. (after stating the facts as above). [1] The issues made by the pleadings upon the question of fraud should, in our opinion, have been submitted to the jury. The testimony is not entirely insufficient, as a pure matter of law, to constitute a cause of action against the appellees. The officers of the A. P. Moore's Sons, Incorporated, as admittedly proven, signed and delivered an audited annual financial statement of such corporation to the R. G. Dun & Co. mercantile agency. The statement on its face purported to reflect the solvency or financial strength of the corporation, exhibiting all of its resources and all of its liabilities. The sole purpose of the statement as issued, in form and contents, was, as proven, to obtain · loans or credit. And there is testimony tending to show knowledge on the part of directors as such of the statement as issued, in form and contents, and the purpose of its issuance. A particular item of "asset" or resource was stated therein simply as unpaid assessments of stockholders, "$50,000." It can hardly be doubted from the evidence that such particular item was intended, to the knowledge of some of the directors, to be carried into the statement to the advantage of the corporation, inducing a favorable opinion of credit upon the whole statement. The recital of the purported fact, as simply stated, is clear and unambiguous, and a reasonable person could gather therefrom as fact that a valid absolute assessment to the amount stated had been agreed upon by the stockholders, and that such sum was available and payable to the corporation as a part of· its resources or working capital to discharge its obligations as they fell due in the ordinary course, of business. And it was permissible to appellant to give it that meaning, as it had the right to presume that the audited statement approved by the officers correctly recited the facts. There were no circumstances putting appellant upon inquiry that the assessment was not payable absolutely, or was not agreed to by stockholders,

or that all the facts were not stated. And in the form of the statement it was permissible to appellant to conclude, without further inquiry, that it was an assessment pursuant to express agreement or understanding of the stockholders, and not an attempted assessment pursuant to any statutory permission or authority. Accordingly it would appear that the appellant was ignorant, actually and permissibly, of the truth of the matter of the specific item listed, and upon the whole statement. Such being the inference that may be drawn, and the evidence further tending to show fraud of directors in the listing of the item, an action for deception would lie in case the appellant was influenced to act upon the statement in a way to his damage.

[2-4] The parties seem to agree upon the law of the case. However, if in the transaction which is in suit it is affirmatively shown that any individual director did not have actual participation or knowledge, a claim of. fraudulent or false representation cannot be predicated against him. A director is liable only for his own acts or omissions. He is not merely by virtue of his position liable. · 7 Thompson, Corp. § 8510. As appears in this case, the minutes of the corporation purport to show the appellant J. B. Parker, present at a directors' called meeting of January 2, 1922, voting for a resolution of assessment of stockholders. These minutes were offered in evidence, and properly so, by appellant. And, over objection of appellant, Mr. Parker was· permitted to testify to the effect that he did not in fact participate, and that no such resolution was passed by a board as such. It was competent for him to so testify, as against a charge of fraud. He was entitled to have the whole of what was said and done on the sub-·. ject at that meeting or interview stated as a part of the evidence. The question was as to the true nature of the transaction which the parties had under consideration, for the correct determination of the question of fraud on his part. It was essential that all that had passed between them should be known. The minutes were prima facie, and not conclusive, of the statements therein. Both the minutes and the evidence of Mr. Parker were equal evidence to the jury, who were authorized to give such credence as it might appear to them to deserve. And actual knowledge or assent on the part of Mr. Parker, in the capacity of ·a creditor, of the form and contents of the statement, could probably be inferred by the jury from the evidence. The same can be said as to the special defense of Mr. T. B. Ramey, Jr.—that a jury question was presented—although the evidence, as we think, as to him is on the very border line of any legal liability, rather tending to show he was innocent. He was not a director before January 10, 1922, and was never present at a directors' meeting. If he afterwards had any means at hand of knowing that the particular item was actually in-

corporated in the statement given to R. G. Dun & Co., so as to impute assent to what others did, it rests entirely in the opportunity and means as a director to so know in the few days before the date it was delivered to R. G. Dun & Co. As it stands, the inference of knowledge or assent primarily is for the jury.

The judgment is reversed, and the cause is remanded.